**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1686-20

PAUL KRAVITS,

    Plaintiff-Appellant,

v.

ROYAL OAKS APARTMENTS,
LLC and METROPLEX
MANAGEMENT, LLC,

    Defendants-Respondents.

_____

Submitted January 18, 2022 – Decided January 27, 2022

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5207-18.

Forman, Cardonsky & Tsinman, attorneys for appellant (Juan C. Cervantes, on the briefs).

Bolan Jahnsen Dacey, attorneys for respondents (Daniel S. Jahnsen and Vicki Shea Connolly, on the brief).

PER CURIAM

Plaintiff Paul Kravits appeals from a January 18, 2021 order granting defendants Royal Oaks Apartments, LLC and Metroplex Management, LLC's (collectively defendants) motion for summary judgment on count two of the complaint. Count two alleged a violation under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50, claiming defendants: (1) failed to respond to work orders for plaintiff's residence; (2) improperly raised his rent; (3) entered his apartment without providing adequate notice; and (4) made disparaging remarks regarding plaintiff's sexual orientation. Having considered plaintiff's arguments in light of the record and controlling legal principles, we affirm.

I.

We conduct a de novo review of an order granting a summary judgment motion, see Gilbert v. Stewart, 247 N.J. 421, 442 (2021), and we "apply the same standard as the trial court," State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . .

A-1686-20

as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Meade v. Twp. of Livingston, ___ N.J. ___, ___ (2021) (slip op. at 17-18); Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (quoting Borough of Harvey Cedars v. Karan, 214 N.J. 384, 401 (2013)).

Our review of an order granting summary judgment requires our consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to summary judgment as a matter of law." Bhagat v. Bhagat, 217 N.J. 22, 38 (2014). Here, we discern the following facts from our review of the parties' Rule 4:46-2 statements and the record of the proceedings before the motion court.

On August 31, 2018, plaintiff filed a complaint against defendants. In count one of the complaint, plaintiff alleged negligence based on defendants' failure to replace lighting near the entrance to his apartment resulting in a trip and fall accident and resulting injuries. On April 26, 2019, plaintiff filed an amended complaint and added count two "based upon [p]laintiff's sexual orientation." Plaintiff claimed he is a "homosexual," and "therefore[,] a member

of a protected class pursuant to [the] NJLAD," which defendants had known "since as late as 2014."

At his deposition, plaintiff testified he moved to defendants' apartment complex in either late December 2010 or early January 2011. In 2012, plaintiff confided in a neighbor about his sexual orientation and claims the neighbor shared this information with the neighbor's family members. According to plaintiff, at least one other neighbor was aware of his sexual orientation.

Plaintiff also testified that he believed defendants' employees were aware of his sexual orientation, as evidenced by one employee who "showed up to [plaintiff]'s apartment with beer and proceeded to make homophobic slurs and gibes at [plaintiff]'s expense."[1] Plaintiff suspected the employee learned of his sexual orientation from the neighbor to whom plaintiff had revealed that information. And, plaintiff felt defendants' other employees knew of his sexual orientation because the office employees "discuss every resident." "[H]e began to suspect that [defendants' employees] knew [his sexual orientation] given how often he had to complain to get a single problem fixed." Plaintiff is unaware if

---

[1] Defendants' employee claimed he regularly speaks to plaintiff and stopped over to share a beer with him on two occasions and has similarly visited other residents. The employee admitted to using the term "faggot" in the past but denied any previous knowledge of plaintiff's sexual orientation, claiming he learned of it for the first time after the initiation of the current lawsuit.

A-1686-20

the other employees learned of his sexual orientation through the neighbor or defendants' employee.

Plaintiff testified that since 2010 he "has dealt with numerous maintenance issues to which [defendants] responded to with great delay or not at all," including: (1) "a recurring problem with sewage in [plaintiff's] kitchen sink"; (2) an "out light" by his apartment; (3) snow on the handicap "ramp area next to where [plaintiff] would park his car" after snow events; and (4) "dead trees in the vicinity of [plaintiff's] apartment," one of which "fell and destroyed his grill." Additionally, plaintiff claims he "was never provided with any [w]ork [o]rder forms[,] [which] other tenants receiv[ed]."

Further, plaintiff stated he "was the victim of other instances of disparate treatment by [defendants]." By way of example, plaintiff referenced: (1) "one occasion in 2017 when [plaintiff] attempted to negotiate a lower rent increase" but defendants "never returned his requesting phone call"; and (2) another occasion in 2014 when defendants wanted to evict him. Furthermore, plaintiff testified he believes defendants' representatives "would enter his apartment without notice[] and" on one such occasion "stole his copy of the book 'The Bible and Homosexuality.'"

A-1686-20

Following a period of discovery, the parties reached a resolution as to count one of the amended complaint. On October 13, 2020, count one was dismissed with prejudice by way of a stipulation.[2] Thereafter, defendants moved for summary judgment as to count two of the amended complaint on the basis plaintiff "failed to present a prima facie case of discrimination."[3]

On January 8, 2021, the trial court heard oral argument regarding defendants' motion for summary judgment and reserved decision. On January 18, 2021, the trial court granted defendants' motion for summary judgment. In its memorializing order, the trial court noted:

> Plaintiff does not argue that defendant[s] must have known that [p]laintiff was a member of a protected class. Plaintiff instead argues that circumstantial evidence has presented [p]laintiff with a strong presumption of discriminatory intent[,] which is sufficient to establish a prima facie case of discrimination. However, the first prong of Myers[4] requires proof of the prima facie elements of discrimination. Thus, the standard does not relate to [p]laintiff's strong presumption, but if the facts, taken

---

[2] Plaintiff claims the stipulation of dismissal with prejudice as to the allegation of negligence in count one was entered by the parties on October 13, 2020. The stipulation in plaintiff's appendix, however, is dated September 25, 2020, and stamped "filed" on October 13, 2020.

[3] The record does not reflect the date defendants filed their notice of motion for summary judgment.

[4] Myers v. AT & T, 380 N.J. Super. 443, 452-53 (App. Div. 2005).

together, raise enough suspicions of pretextual conduct of discrimination. Plaintiff therefore does not meet this element.

. . . .

In conclusion, based on the evidence viewed in favor of [plaintiff], a rational fact finder could not find for him and, therefore, summary judgment for . . . [d]efendant[s] is GRANTED and all claims against [them] shall be dismissed with prejudice.

[(citations omitted).]

On appeal, plaintiff argues there exists genuine issues of material fact as to the alleged discriminatory conduct of defendants precluding the grant of summary judgment.

II.

"The [NJ]LAD's goal is 'nothing less than the eradication of the cancer of discrimination.'" Meade, ___ N.J. at ___ (slip op. at 19) (quoting Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 335 (2007)). The NJLAD, among other things, prohibits landlords from discriminating against a tenant based upon the tenant's sexual orientation. N.J.S.A. 10:5-12(g)(2)[5] provides in relevant part, it shall be an unlawful discrimination for any person, having "the right to sell, rent,

_____

[5] The trial court mistakenly referred to N.J.S.A. 10:5-12(a), which pertains to unlawful discrimination employment practices.

7

lease, assign, or sublease any real property or part or portion thereof, or any agent or employee of any" such person, to discriminate "in the furnishing of facilities or services in connection therewith" because of a tenant's sexual orientation. See also N.J.S.A. 10:5-5(a) (defining "person" to include corporations). It is well-established that "[t]he [NJ]LAD is remedial legislation that should be liberally construed to advance its purposes." Meade, ___ N.J. at ___ (slip op. at 19) (first alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 10 (2021)).

To be liable under N.J.S.A. 10:5-12(g)(2), a defendant must both: (1) know the plaintiff is a member of a class protected by the NJLAD; and (2) have acted in a purposeful or intentional way adverse to the plaintiff's benefit because of plaintiff's class. N.J.S.A. 10-12(g)(2) (providing it is unlawful "to discriminate . . . because of race, creed, color, national origin, . . . sexual orientation," etc. (emphasis added)); DISCRIMINATION Black's Law Dictionary (11th ed. 2019) (defining discrimination as "confer[ing] privileges on a certain class or . . . den[ying] privileges to a certain class because of race, age, sex, nationality," etc.).

But because "direct evidence of discrimination is often" difficult to find, courts apply a burden-shifting analysis to prove discrimination. Myers, 380 N.J.

A-1686-20

Super. at 452-53. "The familiar elements of th[is] analytical framework" are as follows:

> (1) proof by plaintiff of the prima facie elements of discrimination; (2) production by [defendant] of a legitimate, non-discriminatory reason for the adverse . . . action [or inaction]; and (3) demonstration by plaintiff that the reason so articulated is not the true reason for the adverse . . . action [or inaction], but is instead a pretext for discrimination.
>
> [Id. at 452.]

Under that framework, a plaintiff must first and foremost prove the elements of his or her prima facie case. Victor v. State, 203 N.J. 383, 408 (2010). The plaintiff's "evidentiary burden at the prima facie stage is 'rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent – i.e., that discrimination could be a reason for the [defendant]'s action,' . . . . irrespective of defendant['s] efforts to dispute [plaintiff's] evidence." Meade, ___ N.J. at ___ (slip op. at 20-21) (first quoting Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005); and then quoting id. at 448). Only after a plaintiff successfully establishes a prima facie case will a presumption arise "that the [defendant] unlawfully discriminated against the plaintiff." Grande v. St. Clare's Health Sys., 230 N.J. 1, 18 (2017) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 596 (1988)).

A-1686-20

"There is no single prima facie case that applies to all [NJLAD] discrimination claims." Victor, 203 N.J. at 408. Rather, the elements a plaintiff must prove are defined by "the particular cause of action."[6] Ibid. NJLAD discrimination claims share similar, broad elements, regardless of the particular cause of action, which a plaintiff is required to prove, including: (1) he or she is a member of a class protected by the NJLAD; (2) he or she was qualified for a benefit offered by the defendant; (3) defendant denied plaintiff the benefit sought; and (4) others, who are not members of the same protected class, with the same qualifications received the benefit sought.[7]

---

[6] In their brief, defendants claim plaintiff needed to prove: (1) he "is in a class of persons the statute is intended to protect;" (2) defendants were aware plaintiff is a member of said class; and (3) "defendant[s] intentionally discriminated against . . . plaintiff based upon his . . . protected class." Defendants rely on this court's holding in Pasquince v. Brighton Arms Apartments, 378 N.J. Super. 588, 598 (App. Div. 2005). Pasquince did not deal with this particular cause of action, however, but rather dealt with the question of whether a landlord's denial of a prospective tenant's lease application based on the tenant's "creditworthiness" was a pretext for discrimination. Id. at 600-01.

[7] See, e.g., Victor, 203 N.J. at 408–09 (noting "the prima facie elements for a complaint arising from the failure to hire" are: (1) "plaintiff falls within a protected class; (2)" "plaintiff was qualified for the work for which he or she applied; (3)" "plaintiff was not hired; and (4)" defendant "continued to seek others with the same qualifications or hired someone with the same or lesser qualifications who was not in the protected status" (emphasis added) (citing Andersen v. Exxon Co., 89 N.J. 483, 492 (1982))); id. at 409 (noting the prima facie elements based upon discriminatory discharge are: (1) "plaintiff is in a

Here, plaintiff argues: (1) "the circumstantial evidence presented in this case, along with [plaintiff's] strong presumptions of discriminatory intent, [were] sufficient to establish a prima face case [of] discrimination"; (2) "[a]t the very least, [the] circumstantial evidence established a genuine issue of material fact as to [defendants'] knowledge of [plaintiff]'s sexual orientation"; and (3) defendants "cannot proffer a legitimate, non-discriminatory reason for any of their actions."

First, plaintiff claims his circumstantial evidence is sufficient to prove the elements of his prima facie case, which include: (1) plaintiff is a member of a class protected by the NJLAD; (2) plaintiff was qualified for services in

protected class; (2)" "plaintiff was otherwise <u>qualified</u> and performing the essential functions of the job; (3)" plaintiff was terminated; and (4)" defendant "thereafter sought <u>similarly qualified individuals</u> for that job" (emphasis added) (citing <u>Clowes v. Terminix Int'l, Inc.</u>, 109 N.J. 575, 596–97 (1988))); <u>ibid.</u> (noting "the prima facie elements of a retaliation claim" are: "(1) plaintiff was in a <u>protected class</u>; (2) plaintiff <u>engaged in protected activity</u> known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) that there is a causal link between the protected activity and the adverse employment consequence" (citing <u>Woods–Pirozzi v. Nabisco Foods</u>, 290 N.J. Super. 252, 274 (App. Div. 1996))); <u>Pasquince</u>, 378 N.J. Super. at 599 (noting the prima facie elements of a refusal to rent an apartment are: "(1) plaintiff is in [a <u>protected] class</u> of persons"; (2) "plaintiff was <u>ready and able to accept</u> defendant's offer to rent or lease; and" (3) "[defendant] "<u>refused</u> to rent an apartment to plaintiff" (emphasis added) (second alteration in original) (quoting <u>T.K. v. Landmark West</u>, 353 N.J. Super. 353, 359-63 (Law Div. 2001))).

11

connection with his lease offered by defendants; (3) defendants denied plaintiff the benefit of the services sought; and (4) other lessees, who are not members of the same protected class as plaintiff, received the benefit of the services sought by plaintiff. See Victor, 203 N.J. at 408–09. The court may not presume defendants unlawfully discriminated against plaintiff based on plaintiff's sexual orientation absent plaintiff's proof of a prima facie case. See Grande, 230 N.J. at 18 (quoting Clowes, 109 N.J. at 596).

In the matter under review, defendants do not deny plaintiff is a member of a class protected by the NJLAD. Defendants also do not challenge plaintiff's right to leasehold services or his claims of tardiness and inaction in addressing his apartment-related issues. But, plaintiff cannot highlight any instance where another lessee at his apartment complex, who are not members of the same sexual orientation as plaintiff, were treated differently by defendants. This claim is unsubstantiated and not supported by any proffered evidence; instead, plaintiff makes a conclusory, blanket statement regarding disparate treatment. Thus, his NJLAD claim was properly dismissed.

Moreover, plaintiff's circumstantial evidence of defendants' discrimination was largely based on their failure "to respond to or properly correct maintenance issues, including[:]"

12

[I]issues with sewage in [plaintiff]'s kitchen sink[;] . . . issues regarding an out light in 2016[,] which led to [plaintiff] being injured in a fall down incident; issues regarding a failure to remove dead trees[,] which resulted in the destruction of [plaintiff]'s grill; and failures to shovel the snow from the ramp next to [plaintiff]'s parking spot.

Plaintiff, however, provided no evidence indicating other tenants received responses or corrections to their maintenance issues faster or more reliably than he. Moreover, the work order spreadsheet, which plaintiff included as evidence of defendants' agent ostensibly lying to him regarding the issue of sewage in his kitchen sink, "yields only two results for complaints involving sewage in a kitchen sink over a period of nearly ten years, and both are for [plaintiff]'s . . . unit." Because plaintiff was the only tenant filing complaints "involving sewage in a kitchen sink," the work order spreadsheet fails to show defendants were responding to or were providing superior maintenance to other tenants for the same, or comparable, issues. None of this is indicative of disparate treatment. See Victor, 203 N.J. at 408–09.

Similarly, plaintiff's circumstantial evidence of discrimination based on defendants entering his apartment without adequate notice, and defendants' "refusal" to negotiate plaintiff's rent increase, "which other tenants seemingly were able to do freely," are based solely on plaintiff's presumptions. The record

13

is devoid of any proof showing defendants entered plaintiff's apartment or negotiated with other lessees as to their rent increases.

## III.

In the alternative, plaintiff claims the circumstantial evidence presented creates "a genuine issue of material fact as to [defendants'] knowledge of [plaintiff]'s sexual orientation." Again, we disagree. A non-moving party cannot prevail on "a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. Rather, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of [material] fact exists.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 479–80 (2016) (emphasis added) (quoting Robbins v. Jersey City, 23 N.J. 229, 241 (1957)).

An established prima facie case of discrimination serves as competent evidential material by which to demonstrate a genuine issue of material fact. Absent direct evidence a defendant discriminated based on a plaintiff's membership in a protected class, a plaintiff may only demonstrate a defendant's knowledge that the plaintiff is a member of a protected class by successfully proving the elements of his or her prima facie case. See Victor, 203 N.J. at 408; see also Myers, 380 N.J. Super. at 452-53 (noting direct evidence of a parties'

14

knowledge may be difficult to find).  The court may not presume a defendant's knowledge absent the plaintiff's proof of <u>all the elements</u> of his or her prima facie case.  <u>See</u> <u>Grande</u>, 230 N.J. at 18 (quoting <u>Clowes</u>, 109 N.J. at 596).  Hence, whether a defendant had knowledge a plaintiff is a member of a protected class does not constitute a genuine issue of material fact in the absence of plaintiff's success in proving all the elements of his or her prima facie case.  <u>Victor</u>, 203 N.J. at 408; <u>see, e.g.</u>, <u>Meade</u>, ___ N.J. at ___ (slip op. at 23, 25) (holding the plaintiff "presented sufficient evidence to create a genuine issue of material fact" where the plaintiff "established a prima facie case of . . . discrimination").

Plaintiff did not prove all the elements of his prima facie case.  Based on the record presented, no rational fact finder could find defendants had knowledge of plaintiff's sexual orientation, and, therefore, the trial court's decision to grant summary judgment to defendants on count two of the amended complaint was well-reasoned.

## IV.

Finally, plaintiff insinuates defendants' failure to offer a legitimate, non-discriminatory reason for their actions constitutes proof of discrimination.  However, a defendant is not required to offer a legitimate, non-discriminatory reason for its inaction until after the plaintiff successfully establishes a prima

15

facie case. Pursuant to the burden-shifting analysis framework, a plaintiff must first and foremost prove the elements of his or her prima facie case. Victor, 203 N.J. at 408. Only after the plaintiff successfully establishes a prima facie case will a presumption arise that a defendant unlawfully discriminated against the plaintiff. See Grande, 230 N.J. at 18 (quoting Clowes, 109 N.J. at 596). Thereafter, and only thereafter, does the burden of production shift to the defendant to demonstrate legitimate reasons for its inactions. Victor, 203 N.J. at 408 n.9.

For the foregoing reasons, we affirm the entry of summary judgment and the dismissal with prejudice of count two of plaintiff's amended complaint. To the extent we have not already addressed them, any additional arguments plaintiff raises on appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1686-20